UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORIO MEZA RECIO (A# 219 312 280),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | No. 1:26-cv-04210-DC-CKD<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, detained by the Immigration and Customs Enforcement Agency (ICE), has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] For the reasons which follow, the court recommends that the petition be denied.

## I. Facts and Procedural History

Petitioner is a citizen of Mexico who gained lawful permanent resident status in March 2020. ECF No. 8 at 11, 12. On October 4, 2024, Petitioner was convicted under Cal. Penal Code § 245(b) for assault with a semi-automatic firearm and sentenced to 6 years in prison. Id. at 15. On May 22, 2026, upon notification of Petitioner's release on parole, ICE officers arrested Petitioner and placed him in removal proceedings. Id. at 6-13. Removal proceedings remain pending and

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

Petitioner remains detained at the Golden State Annex facility. ECF No. 1 at 2.

Petitioner filed a petition for writ of habeas corpus on June 1, 2026 arguing that detention exceeding six months without a bond hearing is unconstitutional and that due process requires the considerations of alternatives to detention. ECF No. 1. Respondent's answer asserts that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(C), as the 2024 assault conviction is considered a crime involving moral turpitude. ECF No. 8. Petitioner's traverse argues that due process requires an impartial adjudicator decide if ongoing detention bears a reasonable relation to flight risk and danger to the community, and that the Executive Office for Immigration Review ("EOIR") is unable to impartially adjudicate Petitioner's bond request. ECF No. 9.

## II. Legal Standards

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

The detention of a noncitizen pending removal proceedings is governed by 8 U.S.C § 1226. For those subject to mandatory detention pursuant to 8 U.S.C. § 1226(c), the Attorney General "shall take into custody any [noncitizen] who" falls into one of the enumerated categories involving criminal offenses and national security grounds, § 1226(c)(1)(A)-(E), and specifies that the Attorney General "may release" such a noncitizen "only if the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the noncitizen will not pose a danger or flight risk. Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (emphasis in original).

/ / /

/ / /

## III. Analysis

### A. Petitioner is Subject to Mandatory Detention Pursuant to 8 U.S.C § 1226(c)

While 8 U.S.C § 1226(a) allows the Attorney General to either detain *or* release noncitizens while their removal proceedings are pending, § 1226(c) imposes *mandatory* detention on certain noncitizens. Detention is mandatory for any noncitizen who is deportable under 8 U.S.C. § 1227(a)(2)(A)(i) for having been convicted of a crime involving moral turpitude, for which a sentence of one year or longer may be imposed, within five years after the date of admission. 8 U.S.C. § 1226(c)(1)(C), 8 U.S.C. § 1227(a)(2)(A)(i). Respondent claims that Petitioner is deportable under 8 U.S.C. § 1227(a)(2)(A)(i) and therefore subject to mandatory detention under U.S.C. § 1226(c)(1)(C) as a result of his 2024 assault conviction. ECF No. 8 at 3.

#### 1. Crime involving moral turpitude for which one or more years may be imposed

Petitioner was convicted under Cal. Penal Code § 245(b), assault with a semi-automatic firearm, for which he was sentenced to six years imprisonment. ECF No. 8 at 15-35. While neither the Ninth Circuit nor the Board of Immigration Appeals ("BIA") has ruled specifically on whether Cal. Penal Code § 245(b) is considered a crime involving moral turpitude, both have held that a conviction under a preceding subsection, Cal. Penal Code § 245(a)(1), is a crime involving moral turpitude. See Safaryan v. Barr, 975 F.3d 976 (9th Cir. 2020), giving Chevron deference to the BIA's determination in Matter of Wu, 27 I&N Dec. 8 (BIA 2017). The same analysis can be used to deem § 245(b) a crime involving moral turpitude

Safaryan and Wu utilized the categorical approach to determine that the elements of § 245(a)(1) fall within the generic federal definition of a crime involving moral turpitude. To identify the elements of § 245(a)(1), the courts consulted the California criminal pattern jury instructions. Safaryan, 975 F.3d 976 at 984. They then found that the statute's elements combine a sufficiently reprehensible actus reus - the use of a deadly weapon - with a sufficiently culpable mens rea – acting willfully with the knowledge that the action was likely to apply force to another person – and therefore constitute a crime involving moral turpitude. Id. at 987. Notably, the jury instructions for § 245(a)(1) and § 245(b) are written together; they include the same *elements* of the crime and only list the use of a deadly weapon (§ 245(a)(1)) and semiautomatic firearm (§

245(b)) as alternative *means* of committing the same crime. See Judicial Council of California, Criminal Jury Instructions (CALCRIM) No. 875. The statute also imposes more punishment for the use of a semiautomatic firearm (§ 245(b)) than for the use of deadly weapon or instrument other than a firearm (§ 245(a)(1)). See Cal. Penal Code § § 245(a)(1), (b). This implies that the use of a semiautomatic weapon in § 245(b) makes the crime's actus reus even more "reprehensible" than in § 245(a)(1). In other words, the courts' reasoning for finding that § 245(a)(1) constitutes a crime involving moral turpitude logically follows for § 245(b). Therefore, Petitioner's conviction under Cal. Penal Code § 245(b) is correctly classified as a crime involving moral turpitude for which a sentence of one year or more may be imposed.

**2. Commission within five years after admission**

To trigger deportability under 8 U.S.C. § 1227(a)(2)(A)(i), the crime involving moral turpitude must have been committed within five years after the date of admission. 8 U.S.C. § 1227(a)(2)(A)(i). Determining the "date of admission" is not as straightforward as a plain reading of the statute may imply (see, e.g., Matter of Alyazji, 25 I&N Dec. 397 (BIA 2011), discussing the circumstances under which an entry into the United States versus a subsequent adjustment of status would be considered the date of admission for removability purposes), and the record is somewhat unclear as to the date and circumstances of Petitioner's "admission" for the purposes of § 1227(a)(2)(A)(i).

Form I-213 states that Petitioner entered the United States at the San Ysidro port of entry as a lawful permanent resident on March 12, 2020. ECF No. 8 at 12. If accurate, that would make Petitioner's date of "admission" March 12, 2000. However, page 1 of the I-213 indicates that Petitioner may have *adjusted status* to that of a lawful permanent resident. See Id. at 11, indicating the date, place, time and manner of last entry as "03/12/2020 Unknown Time, SYS, IR6-*Adj*-Spouse of a U.S. Citizen" (emphasis added). Adjustment of status can only happen once someone has already entered the United States in another (or without) immigration status. 8 U.S.C. § 1255(a),(i). If Petitioner gained lawful permanent resident status through adjustment of status, then the date of adjustment of status is considered the date of admission for the purposes of § 1227(a)(2)(A)(i) *only if* he previously entered the U.S. without inspection. Alyazji, 25 I&N Dec.

397, 401. If he entered in another status – for example with a visitor visa – and later adjusted, then the date of admission for the purposes of § 1227(a)(2)(A)(i) would be the date of last entry. Id. at 408. The record does not indicate when or under what circumstances Petitioner entered before adjustment, if he did indeed adjust status subsequent to a prior entry.

In the absence of a clear date and description of any other entry, the undersigned will base its analysis on an assumption that the information on page 2 of the I-213 (ECF No. 8 at 12) – that Petitioner entered the United States on March 12, 2000, *as* a lawful permanent resident - is accurate, and that the addition of “adj” on page 1 (Id. at 11), implying a subsequent adjustment of status, was a typographical error. This reading would make the relevant date of “admission” March 12, 2020. Petitioner’s 2024 assault conviction, which he committed in 2024 (Id. at 15, 18), therefore fell within five years after the date of admission. As such, the conviction renders Petitioner deportable under § 1227(a)(2)(A)(i) and therefore subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) and not entitled to a bond hearing.

**B. Petitioner may challenge detention authority in another forum**

Though the undersigned finds the record evidence sufficient to determine that Petitioner is deportable under 8 U.S.C. § 1227(a)(2)(A)(i), the uncertainties discussed in section III.A. above *could* justify a good faith argument that Petitioner may not be subject to mandatory detention. Should Petitioner wish to dispute whether he is indeed subject to 8 U.S.C. § 1226(c) he may request a hearing before an Immigration Judge pursuant to Matter of Joseph, 22 I&N Dec. 799 (BIA 1999).

Petitioner argues that EOIR would be unable to impartially adjudicate Petitioner’s claims due to its “profound institutional transformation” and “systematic destruction of judicial independence.” ECF No. 9 at 6-12. His traverse discusses the replacement of Immigration and Appellate Immigration Judges with “deportation judges” and EOIR’s issuance of directives suggesting bias in favor of the government. Id. These allegations are certainly concerning. However, EOIR remains the proper forum for Matter of Joseph hearings, and the undersigned finds the record evidence insufficient to deem EOIR wholly incapable of impartially adjudicating Petitioner’s claims.

**C. Petitioner's detention has not become prolonged**

Petitioner argues that prolonged detention without a bond hearing is unconstitutional. Indeed, the Due Process Clause of the Fifth Amendment protects persons in the removal process from "arbitrary prolonged detention." Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018). While the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c), it did so with the understanding that detention is relatively "brief" and "limited," lasting "roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the [noncitizen] chooses to appeal." Demore v. Kim, 538 U.S. 510, 513, 529 n.12, 530, 531 (2003). Justice Kennedy joined the opinion in full, but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring). Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420. Additionally, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional." Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018).

While the undersigned agrees that prolonged detention may warrant an as-applied constitutional challenge to mandatory detention, Petitioner's detention in this case has not become prolonged. Petitioner has been detained since May 22, 2026, less than two months. This length of time is well-within the timeframe contemplated in Demore.

**IV. Recommendation**

For the reasons set forth above, IT IS RECOMMENDED that the petition for writ of habeas under 28 U.S.C. § 2241 (ECF No. 1) be DENIED.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within 14 days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 16, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 Reci2410.imm.frs